**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLE JERNIGAN<br>4841 Fern Grove Court<br>Groveport, Ohio 43125, | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |
| CROSS COUNTRY INNS INC.<br>D/B/A ARDENT COMMUNITIES<br>470 Olde Worthington Road, Suite 101<br>Westerville, Ohio 43082 | )<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED<br>HEREIN** |
| -and- | )<br>) | |
| ARDENT PROPERTY MANAGEMENT,<br>INC.<br>470 Olde Worthington Road, Suite 120<br>Westerville, Ohio 43082 | )<br>)<br>)<br>)<br>) | |
| -and- | )<br>) | |
| METRO DEVELOPMENT LLC<br>470 Olde Worthington Road, Suite 100<br>Westerville, Ohio 43082, | )<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff, Nichole Jernigan, by and through undersigned counsel, as her Complaint against Defendants, states and avers the following:

**PARTIES, VENUE, & JURISDICTION**

1. Jernigan is a resident of the city of Groveport, Franklin County, Ohio.

2. At all times herein, Jernigan was acting in the course and scope of her employment.

3. Cross Country Inns Inc. is a domestic corporation that does business at 470 Olde Worthington Road, Westerville, Delaware County, Ohio 43082 ("Westerville Location").

4. Cross Country Inns Inc. is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

5. Ardent Property Management, Inc. is a domestic corporation that does business at the Westerville Location.

6. Ardent Property Management, Inc. is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

7. Metro Development LLC is a domestic limited liability company that does business at the Westerville Location.

8. Metro Development LLC is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

9. All of the material events alleged in this Complaint occurred in Delaware County, Ohio.

10. Cross Country Inns Inc.; Ardent Property Management, Inc.; and Metro Development LLC form a single employer for the purposes of the claims asserted by Jernigan herein, in that they have common offices, common management, common record keeping, common and shared equipment, shared bank accounts, centralized control of labor relations and personnel, and common ownership and financial control. Cross Country Inns Inc.; Ardent Property Management, Inc.; and Metro Development LLC are hereinafter referred to collectively as "Ardent."

11. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Jernigan is alleging a Federal Law Claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

12. This Court has supplemental jurisdiction over Jernigan's state law claims pursuant to 28 U.S.C. § 1367, as Jernigan's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

14. Within 300 days of the conduct alleged below, Jernigan filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-00905 against Ardent ("Jernigan EEOC Charge").

15. Jernigan filed the Jernigan EEOC Charge dually with the EEOC and the Ohio Civil Rights Commission ("OCRC").

16. On or about February 8, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Jernigan regarding the Charges of Discrimination brought by Jernigan against Ardent in the Jernigan EEOC Charge.

17. Jernigan received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

18. Jernigan has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

19. Jernigan has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

20. Jernigan is a former employee of Ardent.

21. On or about December 16, 2019, Jernigan began working for Ardent.

22. Ardent employed Jernigan as a staff accountant.

23. On or about March 9, 2020, Ohio Governor Mike DeWine signed Executive Order 2020-01D, declaring a state of emergency due to the COVID-19 pandemic.

24. In or about March 2020, Ardent allowed employees to work from home due to the COVID-19 pandemic.

25. Jernigan has an autoimmune disorder and diabetes ("Jernigan's Conditions").

26. Because of Jernigan's Conditions, Jernigan is at a heightened risk of developing a serious case of COVID-19.

27. Because of Jernigan's Conditions, Jernigan is at a heightened risk of dying from COVID-19.

28. In or about March 2020, Jernigan provided Ardent with documentation of Jernigan's Conditions.

29. Jernigan's Conditions constitute a physical impairment.

30. Because of Jernigan's Conditions, Jernigan is significantly limited in one or more major life activities.

31. Jernigan has a record of physical impairment.

32. Because of Jernigan's Conditions, Ardent perceived Jernigan as disabled.

33. Jernigan was disabled within the meaning of ADA.

34. Jernigan was disabled within the meaning of R.C. § 4112.01 *et seq.*

35. From in or about March 2020 to on or about May 15, 2020, Jernigan worked from home.

36. On or about May 15, 2020, Ardent required Jernigan to return to work at the Westerville Location.

37. On or about May 15, 2020, Jernigan asked Craig Long to allow her to continue working from home ("First Request for Accommodation").

38. Long was chief financial officer for Ardent.

39. Jernigan made the First Request for Accommodation because of Jernigan's Conditions.

40. Ardent knew that Jernigan made the First Request for Accommodation because of Jernigan's Conditions.

41. The First Request for Accommodation was reasonable.

42. Ardent could have granted the First Request for Accommodation without undue burden on the company.

43. Ardent denied the First Request for Accommodation.

44. Ardent did not engage in the interactive process to determine whether a reasonable accommodation was available.

45. Ardent's denial of the First Request for Accommodation was an adverse employment action.

46. Jernigan opposed Ardent's denial of the First Request for Accommodation.

47. When Jernigan returned to work at the Westerville Location, employees at the Westerville Location did not wear masks.

48. Jernigan complained to Long that employees at the Westerville Location did not wear masks.

49. Jernigan told Long that she was at risk of getting COVID-19 because employees at the Westerville Location did not wear masks.

50. Jernigan told Long that employees' failure to wear masks created an unsafe work environment.

51. On or about August 2, 2020, Jernigan tore a ligament in her knee ("Injury").

52. Jernigan's Injury was a physical impairment.

53. Jernigan's Injury significantly limited her in walking.

54. On or about August 10, 2020, Jernigan informed Long about her Injury.

55. On or about August 11, 2020, Jernigan's doctor informed her that she needed physical therapy because of her Injury.

56. Because of the Injury, Ardent perceived Jernigan as disabled.

57. Jernigan was disabled within the meaning of ADA.

58. Jernigan was disabled within the meaning of R.C. § 4112.01 *et seq.*

59. On or about August 11, 2020, Jernigan requested leave due to her Injury ("Second Request for Accommodation").

60. The Second Request for Accommodation was reasonable.

61. Ardent could have granted the Second Request for Accommodation without undue burden on the company.

62. Ardent denied the Second Request for Accommodation.

63. Ardent did not engage in the interactive process to determine whether a reasonable accommodation was available.

64. Ardent's denial of the Second Request for Accommodation was an adverse employment action.

65. Ardent's denial of the Second Request for Accommodation was an adverse action.

66. Ardent denied the Second Request for Accommodation because Jernigan opposed the denial of the First Request for Accommodation.

67. Ardent denied the Second Request for Accommodation because Jernigan complained that employees' failure to wear masks created an unsafe work environment.

68. Jernigan opposed Ardent's denial of the Second Request for Accommodation.

69. On or about August 14, 2020, Ardent terminated Jernigan's employment ("Termination").

70. Crystal Barry informed Jernigan about the Termination.

71. Barry was accounting director for Ardent.

72. The Termination was an adverse employment action.

73. The Termination was an adverse action.

74. On or about August 14, 2020, Barry alleged that the reason for the Termination was that Jernigan did not seem like she wanted to work for Ardent ("Termination Excuse").

75. The Termination Excuse had no basis in fact.

76. The Termination Excuse was not the real reason for the Termination.

77. The Termination Excuse was not a sufficient basis to justify the Termination.

78. The Termination Excuse was pretextual.

79. Ardent has a progressive disciplinary policy ("Discipline Policy").

80. A verbal warning is the lowest level of discipline in the Discipline Policy.

81. Jernigan did not receive a verbal warning before the Termination.

82. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

83. Jernigan did not receive a written warning before the Termination.

84. A termination is the highest level of discipline in the Discipline Policy.

85. Ardent knowingly skipped progressive disciplinary steps in terminating Jernigan.

86. Ardent knowingly terminated Jernigan's employment.

87. Ardent knowingly took an adverse employment action against Jernigan.

88. Ardent knowingly took an adverse action against Jernigan.

89. Ardent intentionally skipped progressive disciplinary steps in terminating Jernigan.

90. Ardent intentionally terminated Jernigan's employment.

91. Ardent intentionally took an adverse employment action against Jernigan.

92. Ardent intentionally took an adverse action against Jernigan.

93. Ardent knew that skipping progressive disciplinary steps in terminating Jernigan would cause Jernigan harm, including economic harm.

94. Ardent knew that terminating Jernigan would cause Jernigan harm, including economic harm.

95. Ardent willfully skipped progressive disciplinary steps in terminating Jernigan.

96. Ardent willfully terminated Jernigan's employment.

97. Ardent willfully took an adverse employment action against Jernigan.

98. Ardent willfully took an adverse action against Jernigan.

99. On or about August 14, 2020, Ardent terminated Jernigan's employment because of her disability.

100. On or about August 14, 2020, Ardent terminated Jernigan's employment because of her perceived disability.

101. On or about August 14, 2020, Ardent terminated Jernigan's employment because she opposed unlawful discrimination.

102. On or about August 14, 2020, Ardent terminated Jernigan's employment because she complained that employees' failure to wear masks created an unsafe work environment.

103. As a direct and proximate result of Ardent's conduct, Jernigan suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF ADA

104. Jernigan restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

105. Ardent treated Jernigan differently than other similarly-situated employees based on her disabling condition.

106. Ardent treated Jernigan differently than other similarly-situated employees based on her perceived disabling condition.

107. On or about August 14, 2020, Ardent terminated Jernigan's employment without just cause.

108. Ardent terminated Jernigan's employment based on her disability.

109. Ardent terminated Jernigan's employment based on her perceived disability.

110. Ardent violated ADA when it discharged Jernigan based on her disability.

111. Ardent violated ADA when it discharged Jernigan based on her perceived disability.

112. Ardent violated ADA by discriminating against Jernigan based on her disabling condition.

113. Ardent violated ADA by discriminating against Jernigan based on her perceived disabling condition.

114. Jernigan informed Ardent of her disabling condition.

115. Jernigan requested accommodations from Ardent to assist with her disabilities, including working from home.

116. Jernigan requested accommodations from Ardent to assist with her disabilities, including taking leave.

117. Jernigan's requested accommodations were reasonable.

118. There was an accommodation available that would have been effective and would have not posed an undue hardship to Ardent.

119. Ardent failed to engage in the interactive process of determining whether Jernigan needed an accommodation.

120. Ardent failed to provide an accommodation.

121. Ardent violated ADA by failing to provide Jernigan a reasonable accommodation.

122. As a direct and proximate result of Ardent's conduct, Jernigan suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

123. Jernigan restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

124. Ardent treated Jernigan differently than other similarly-situated employees based on her disabling condition.

125. Ardent treated Jernigan differently than other similarly-situated employees based on her perceived disabling condition.

126. On or about August 14, 2020, Ardent terminated Jernigan's employment without just cause.

127. Ardent terminated Jernigan's employment based on her disability.

128. Ardent terminated Jernigan's employment based on her perceived disability.

129. Ardent violated R.C. § 4112.02 when it discharged Jernigan based on her disability.

130. Ardent violated R.C. § 4112.02 when it discharged Jernigan based on her perceived disability.

131. Ardent violated R.C. § 4112.02 by discriminating against Jernigan based on her disabling condition.

132. Ardent violated R.C. § 4112.02 by discriminating against Jernigan based on her perceived disabling condition.

133. Jernigan informed Ardent of her disabling condition.

134. Jernigan requested accommodations from Ardent to assist with her disabilities, including working from home.

135. Jernigan requested accommodations from Ardent to assist with her disabilities, including taking leave.

136. Jernigan's requested accommodations were reasonable.

137. There was an accommodation available that would have been effective and would have not posed an undue hardship to Ardent.

138. Ardent failed to engage in the interactive process of determining whether Jernigan needed an accommodation.

139. Ardent failed to provide an accommodation.

140. Ardent violated R.C. § 4112.02 by failing to provide Jernigan a reasonable accommodation.

141. As a direct and proximate result of Ardent's conduct, Jernigan suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT III:  RETALIATION IN VIOLATION OF ADA

142. Jernigan restates each and every prior paragraph of this complaint, as if it were fully restated herein.

143. Jernigan opposed Ardent's failure to accommodate her disability.

144. After Jernigan opposed Ardent's denial of the First Request for Accommodation, Ardent denied the Second Request for Accommodation.

145. After Jernigan opposed Ardent's denial of the Second Request for Accommodation, Ardent terminated Jernigan's employment.

146. Ardent's actions were retaliatory in nature based on Jernigan's opposition to the unlawful discriminatory conduct.

147. Pursuant to ADA, it is an unlawful discriminatory practice to retaliate against an employee for opposing unlawful discrimination.

148. As a direct and proximate result of Ardent's conduct, Jernigan suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT IV:  RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

149. Jernigan restates each and every prior paragraph of this complaint, as if it were fully restated herein.

150. Jernigan opposed Ardent's failure to accommodate her disability.

151. After Jernigan opposed Ardent's denial of the First Request for Accommodation, Ardent denied the Second Request for Accommodation.

152. After Jernigan opposed Ardent's denial of the Second Request for Accommodation, Ardent terminated Jernigan's employment.

153. Ardent's actions were retaliatory in nature based on Jernigan's opposition to the unlawful discriminatory conduct.

154. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

155. As a direct and proximate result of Ardent's conduct, Jernigan suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT V: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

156. Jernigan restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

157. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, including R.C. §§ 4101.11 and 4101.12, or in the common law, requiring employers to furnish a safe environment for employees and frequenters.

158. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he/she engages in protected activity under Ohio law.

159. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, including Ohio Executive Order 2020-01D, or in the common law, against spreading COVID-19.

160. Ardent's failure to require employees to wear masks created an unsafe environment for Jernigan.

161. Jernigan complained about the unsafe environment to Ardent.

162. Jernigan complained that Ardent was risking spreading COVID-19.

163. Ardent's termination of Jernigan jeopardizes these public policies.

164. Ardent's termination of Jernigan was motivated by conduct related to these public policies.

165. Ardent had no overriding business justification for terminating Jernigan.

166. As a direct and proximate result of Ardent's conduct, Jernigan has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Jernigan respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i) Requiring Ardent to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v)    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Ardent to restore Jernigan to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Jernigan for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Jernigan claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

                        Respectfully submitted,

*/s/ Trisha Breedlove*_____
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff Nichole Jernigan*

14

## JURY DEMAND

Plaintiff Jernigan demands a trial by jury by the maximum number of jurors permitted.

                                                           */s/ Trisha Breedlove*
                                                           Trisha Breedlove (0095852)
                                                           Paul Filippelli (0097085)